UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

------------------------------------------------------------- X
JEFFREY GLAUSER,
     Plaintiff,

v.

IP LAW GROUP, P.C., d/b/a PATENT LAWYER
USA, DREW ALIA, and MARK GOLDSTEIN,

     Defendant.
------------------------------------------------------------- X

Civil Action No.: 2:16-cv-03812-CDJ

**FIRST AMENDED COMPLAINT & JURY DEMAND**

Plaintiff Jeffrey Glauser ("Plaintiff"), by way of Complaint against Defendant IP Law Group, P.C. d/b/a Patent Lawyer USA ("Defendant IP Law Group"), Defendant Drew Alia ("Defendant Alia"), and Defendant Mark Goldstein ("Defendant Goldstein") (collectively "Defendants"), allege as follows:

## PARTIES

1. At all relevant times hereto, Plaintiff is an individual residing at 724 Grant Avenue, Collingswood, New Jersey 08107. Plaintiff was employed by Defendant IP Law Group. Immediately prior to his termination, Plaintiff held the position of Vice President of Business Development at Defendant IP Law Group.

2. Defendant IP Law Group is a professional corporation organized and existing under the laws of the State of Pennsylvania with a principal place of business located at 1518 Walnut St., 15th Floor, Philadelphia, Pennsylvania 19102.

3. Defendant Alia, at all times relevant herein, is an individual, principal, and managing partner of Defendant IP Law Group. This claim is brought against Defendant Alia in

his individual capacity and/or as an agent or servant of Defendant IP Law Group acting during the course of his employment.

4. Defendant Goldstein, at all relevant times herein, is an individual, principal, and managing partner of Defendant IP Law Group. This claim is brought against Defendant Goldstein in his individual capacity and/or as an agent or servant of Defendant IP Law Group acting during the course of his employment.

## NATURE OF THE ACTION

5. This is an action brought by Plaintiff, a former employee at IP Law Group, to recover damages and other relief for fraudulent misrepresentation, fraudulent inducement, breach of contract, unjust enrichment, retaliation, for wrongful termination for complaining about unlawful conduct in violation of public policy, and for intentional infliction of emotional distress.

6. Plaintiff seeks compensatory and punitive damages, including lost wages, attorney's fees, costs, and such other relief as the Court deems equitable and just.

## JURISDICTION

7. Plaintiff brings his complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

8. Venue is proper in this district pursuant to 28 U.S.C. §§1391 (b) and (c) as each Defendant is a resident and/or maintains a permanent business office in this district.

## FACTS COMMON TO ALL CLAIMS

9. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

10. In September 2015, Plaintiff interviewed for a management/sales position at Defendant IP Law Group.

11. On September 29, 2015, Plaintiff received an offer email from Defendant Goldstein for the management/sales position. In the email, Defendant Goldstein offered Plaintiff a starting salary of $40,000 with a "2% override on all sales," and a "15% bonus" on all sales Plaintiff generates himself.

12. Furthermore, Defendant Goldstein offered Plaintiff "a profit sharing agreement of an additional 2%" after Plaintiff's six-month anniversary at IP Law Group. In the offer email, Defendant Goldstein estimated that in 2016, Plaintiff's salary "should be north of $175,000.00" and Defendant Goldstein personally believed "$225,000.00 plus is attainable once profit sharing kicks in."

13. Plaintiff accepted the position at IP Law Group and turned down other positions he previously applied for, including a position that paid $65,000 plus full benefits (valued at approximately $12,000 per year).

14. Plaintiff began his career at IP Law Group in October 2015. Defendant IP Law Group allegedly provides intellectual property, patent, and legal services for clients in the United States and around the world.

15. During the course of his employment, Plaintiff observed and complained about several illegal/unethical practices conducted by Defendants. The illegal/unethical practices Defendants conducted include but are not limited to:

   a) According to its website, Defendant IP Law Group is registered to practice before the United States Patent and Trademark Office (USPTO) and tells potential clients that, "Working with an intellectual property patent lawyer is the first step when one is considering filing a patent or trademark application and having an experienced law firm that is registered to practice before the USPTO or United States Patent and

Trademark office will ensure that your idea, invention or brand is filed correctly and protected."

b) Defendant IP Law Group further warns clients that, "Sharing your ideas with a marketing company, invention company or persons that are not registered before the USPTO could be potentially damaging and/or result in stolen ideas or concepts" and ensures clients that, "Patent Lawyer USA has the experience, know how, and protection that any inventor would appreciate to make sure their intellectual property is done correctly and protected."

c) Despite Defendants' own warnings, through calculated and fraudulent methods, Defendants trick clients into believing that they are comprised of a "team of patent attorneys with years of experience and a vast amount of resources." In reality, Defendant IP Law Group is not a law firm and does not have any licensed attorneys on staff.

d) Defendants perpetuate their deception by falsely informing clients that they have lawyers on staff. Specifically, Defendant Alia deceitfully told clients that he was the resident lawyer on staff at Defendant IP Law Group. Upon information and belief, Defendant Alia's law license has been suspended since April 17, 2015 and there are no licensed attorneys on staff at Defendant IP Law Group.

e) In fact, Defendant Alia is listed on the USPTO Patent Practitioner Search as an "Agent" not an "Attorney."

f) Defendant Alia and Defendant Goldstein also used pseudonyms every time they spoke to clients in order to protect themselves from being tracked down and sued by

4

said clients. Specifically, when speaking to clients, Defendant Alia referred to himself as "Anthony the paralegal."

g) On numerous occasions, Plaintiff asked Defendant Alia to give him the name of an "actual attorney" who can advise clients. Defendant Alia referred Plaintiff to Joseph Terzo, who is a licensed attorney in Pennsylvania, but is not an employee of Defendant IP Law Group.

h) Despite not being an employee of Defendant IP Law Group, Joseph Terzo's name is listed on Defendant IP Law Group's website in order to further Defendants' deception.

i) Once clients agree to the services, Defendants' initiate a scheme riddled with fraud and deception. First, clients are forced to pay for Defendants' initial patent search in advance. After clients pay, Defendants outsource the patent search to check for viability. By no coincidence, every patent search ever completed by Defendants has been deemed viable. Defendants then upsell clients on the actual patent application and allegedly outsource the work to Shari Milar in California.

j) In reality, Defendants never actually file the patent applications. For example, in December 2015, an employee of Defendants and Plaintiff's stepdaughter, found a large stack of unfiled patent applications dating all the way back to February 2015.

k) When clients call to complain about not hearing from Defendants about the status of their patent application, Defendants either ignore clients' complaints or falsely assure them that "it's taken care of."

l) Indeed, since the formation of IP Law Group in or about October 3, 2012, there has been no documented cases of a client actually receiving a patent through Defendants' efforts.

16. Throughout his employment at Defendant IP Law Group, Plaintiff complained about Defendants' illegal/unethical practices on numerous occasions.

17. On one such occasion, Plaintiff referred to Defendant Alia by his actual name, as opposed to his pseudonym, in front of a visiting client. Defendant Alia subsequently reprimanded Plaintiff by using his real name and told Plaintiff, "Do you know how much trouble you can get me in for using my real name?"

18. On another occasion, Plaintiff confronted Defendants over the constant client complaints regarding the lack of updates on their patent applications. Defendant Alia answered Plaintiff's concerns by simply stating, "It's taken care of." Upon information and belied, Defendants never actually ever filed clients' patent applications.

19. In a conference call in November 2015, Plaintiff confronted Defendant Alia and Defendant Goldstein about Defendant IP Law Group's general lack of structure and organization. Plaintiff also confronted Defendant Alia over Defendant Alia's frequent inappropriate discussions about marijuana and constant use of Facebook in the office. Defendant Alia responded to Plaintiff by saying, "I will throw you out this window."

20. When Plaintiff's stepdaughter found the stack of unfiled patent applications dating from almost a year earlier, Plaintiff once again complained to Defendant Alia and Defendant Goldstein. Defendant Alia and Defendant Goldstein told Plaintiff, "not to worry about it" and offered no further explanation.

21. Following Plaintiff's complaints about Defendants' unethical/illegal practices, Defendants engaged in a series of retaliatory actions toward Plaintiff that ultimately ended in Plaintiff's wrongful termination. Defendants retaliatory actions toward Plaintiff include but are not limited to:

   m) Defendants told Plaintiff that he was no longer allowed to take prospective client leads for himself for the purpose of negatively affecting Plaintiff's commission based salary.

   n) In January 2016, Defendants failed to pay Plaintiff his commission. When Plaintiff confronted Defendant Alia about the lack of payment, Defendant Alia told Plaintiff that he was not qualified to receive a commission check because Plaintiff was on a draw structure like the rest of the sales team.

   o) In reality, Defendants' offer letter promised Plaintiff commission on his sales and did not mention a draw structure. In fact, the commission promised by Defendants in their offer letter to Plaintiff was the very reason Plaintiff took the position at IP Law Group.

   p) Additionally, at no point did Defendants ever orally inform Plaintiff that he was on a draw structure and Plaintiff's inability to take leads would make meeting the draw quota impossible.

22. On January 28, 2016, Defendants wrongfully terminated Plaintiff in retaliation for complaining about Defendants' unlawful conduct. Defendant's falsely told Plaintiff his termination was due to "financial issues" in the company.

23. During the termination meeting, Plaintiff asked Defendants whether he would receive any additional compensation. Defendant Alia responded by saying a month's severance

"shouldn't be a problem." Defendants never put the severance agreement in writing, despite Plaintiff's request for them to do so, and never paid it.

24. Defendants' illegal/unethical practices in the present case are not surprising in light of other legal actions against both Defendant Alia and Defendant Goldstein.

25. Unbeknownst to Plaintiff prior to his hiring, Defendant Alia and Defendant Goldstein previously owned and operated fraudulent debt negotiation businesses named The Alia Law Group and GMK Solutions, LLC.

26. An order from Connecticut's Department of Banking, Consumer Credit Division reveals that The Alia Law Group and GMK Solutions illegally took money from numerous Connecticut residents to perform debt negotiation services. After taking their clients' money, The Alia Law Group and GMK Solutions would outsource the work to lawyers in Connecticut, without notifying their clients. The Connecticut court found that in many cases The Alia Law Group and GMK Solutions took their clients' money and never actually engaged in any debt negation. The court also found that the companies illegally engaged in debt negotiation without the proper license. In addition to the litigation in Connecticut, there is also a case currently pending against Defendant Alia and Defendant Goldstein in the Eastern District of Pennsylvania. The Pennsylvania case is also in regard to fraudulent debt negotiation activities performed by Defendants. Upon information and belief, Defendants employ that same fraudulent scheme when operating Patent Lawyer USA.

## COUNT ONE

### FRAUD

27. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

28. By engaging in intentional acts and omissions alleged in the complaint, Defendants have made misrepresentations to and defrauded Plaintiffs.

29. Defendants made false statements and material misrepresentations to Plaintiff in connection with Plaintiff's hiring and employment with Defendants.

30. Defendants intended that Plaintiff would rely on the material misrepresentations and omissions to his detriment. Defendants acted willfully, knowingly, and/or recklessly with respect to the acts and omissions set forth above.

31. Plaintiff reasonably relied upon the misrepresentation of Defendants to Plaintiff's detriment. Plaintiff suffered injury and damages as result of such fraud.

32. Defendants concealed and suppressed and/or omitted material facts to their knowledge regarding the vehicle at issue.

33. As a direct and proximate cause of Defendants' misrepresentations, omissions, and concealment of the truth, Plaintiff has been damaged and will continue to suffer damages.

**WHEREFORE**, judgment is demanded against Defendants for compensatory, economic, and punitive damages in an amount be determined by the court, including but not limited to reasonable attorneys' fees, court costs, and other such relief as the court shall deem just and equitable.

## COUNT TWO
### INTENTIONAL NON-DISCLOSURE

34. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

35. By engaging in intentional acts and omissions alleged in the complaint, Defendants have made misrepresentations to and defrauded Plaintiff.

36. Defendants intended that Plaintiff would rely on the material misrepresentations and omissions to his detriment. Defendants acted willfully, knowingly, and/or recklessly with respect to the acts and omissions set forth above.

37. Defendants intended that Plaintiff would rely on the material misrepresentations and omissions to his detriment. Defendants acted willfully, knowingly, and/or recklessly with respect to the acts and omissions set forth above.

38. Plaintiff reasonably relied upon the misrepresentation and non-disclosure of Defendants to Plaintiff's detriment. Plaintiffs suffered injury and damages as result of such fraud.

39. Defendants concealed and suppressed and/or omitted material facts relating to Plaintiff's employment.

40. As a direct and proximate cause of Defendants' misrepresentations, omissions, and concealment of the truth, Plaintiffs have been damaged and will continue to suffer damages.

**WHEREFORE**, judgment is demanded against Defendants for compensatory, economic, and punitive damages in an amount be determined by the court, including but not limited to reasonable attorneys' fees, court costs, and other such relief as the court shall deem just and equitable.

## COUNT THREE

### FRAUDULENT INDUCMENT

41. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

42. By engaging in the intentional acts and omissions alleged in the complaint, Defendants induced Plaintiff to accept employment with Defendants.

43. Defendants' false statements and material misrepresentations and omissions to Plaintiff were material to Plaintiff's decision accept employment with Defendants.

10

44. Plaintiff reasonably relied on the material misrepresentations and omissions of Defendants to his detriment. Plaintiff suffered injury and damages as result of such fraud.

45. For example, Defendants never disclosed to Plaintiff that Defendants were operating a fraudulent business or that they never intended to pay him in accordance with Plaintiff's offer letter.

46. As a result of Defendants' conduct, Plaintiff has been damaged.

**WHEREFORE**, judgment is demanded against Defendant for compensatory, economic, and punitive damages in an amount be determined by the court, including but not limited to reasonable attorneys' fees, court costs, and other such relief as the court shall deem just and equitable.

## COUNT FOUR

### BREACH OF CONTRACT

47. Plaintiff repeat each and every allegation set forth above as if set forth fully herein at length.

48. As described above, pursuant to the law and company policy, Defendants were required to pay Plaintiff for wages earned. This constituted valid and binding agreements between Plaintiff and Defendants.

49. As described above, Defendants have knowingly, unreasonably, and without good faith failed to pay Plaintiff under the express terms of the Agreements.

50. Defendants also breached the Agreements and breached the implied covenant of good faith and fair dealing.

51. As a direct and consequential result of Defendants' breaches, Plaintiff has suffered, and will continue to suffer, damages in an amount to be proven.

**WHEREFORE,** Plaintiff demands judgment in their favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies, punitive damages, pre and post-judgment interest, attorneys' fees and costs of suit, and for such other relief as the Court deems equitable and just.

## COUNT FIVE

### BREACH OF IMPLIED CONTRACT

52. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

53. For the reasons set forth above, Defendants have breached their implied contracts with Plaintiff resulting in damages suffered by Plaintiff for which Defendants are liable.

**WHEREFORE,** Plaintiff demands judgment in their favor and against Defendants on this Count, together with compensatory and equitable relief, all remedies, punitive damages, pre and post-judgment interest, attorneys' fees and costs of suit, and for such other relief as the Court deems equitable and just.

## COUNT SIX

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

54. Plaintiff repeats each and every allegation set forth above as if set forth fully herein at length.

55. Defendants, through the course of conduct set forth above, intentionally or recklessly committed acts or omissions producing emotional distress for Plaintiff.

56. The conduct of Defendants set forth at length above is extreme and outrageous in that it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized society.

57. As a proximate result of said conduct, Plaintiff suffered emotional distress so severe that no reasonable person could be expected to endure same.

58. On account of the conduct of Defendants, Plaintiff has been injured.

**WHEREFORE**, Plaintiff demands judgment in his favor and against Defendants on this Count, together with compensatory and equitable relief, punitive damages, pre-and post-judgment interest, attorneys' fees and costs of suit, and for such other relief that the Court deems equitable and just.

Dated: September 13, 2016

Respectfully Submitted,

/s/ 

Matthew A. Luber (Pa. Id. No. 309323)
mal@njlegal.com
McOmber & McOmber, P.C.
30 S. Maple Avenue, Suite 201
Marlton, New Jersey 08053
Phone: 856-985-9800
Fax: 732-530-8545

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing First Amended Complaint on Defendants via hand-delivery.

Dated: September 13, 2016

/s/ *[signature]*
Matthew A. Luber (Pa. Id. No. 309323)
mal@njlegal.com